DECISION
 DECISION
This appeal concerns certain real property assessments of nine undeveloped lots for the 2006-07 tax year. They are identified in the Douglas County tax records as Accounts R62064, R62085, R62092, R62099, R62106, R62113, R62120, R62127, and R62134 (tax lots 500 and 800 through 1500). (Def s Closing Argument at 2; Ptf s Compl at 1-12.)[1] The lots have no structures (e.g., houses, sheds, shops). (Def s Closing Argument at 1.)
Trial in the matter was held by telephone, with the submission of post-trial briefs by the parties. Plaintiff was represented by Steve Gerlt (Gerlt), an Oregon licensed real estate broker and registered appraiser, and a former appraiser for the Douglas County assessor. Also representing Plaintiff was Valynn Currie, an Oregon licensed real estate broker. Defendant was represented by Paul Meyer, Douglas County Counsel. Ron Northcraft, Douglas County Assessor, Susan Acree (Acree), Residential Appraisal Supervisor, and Eileen Simms, county appraiser, also appeared for Defendant.
 I. STATEMENT OF FACTS
The subject property consists of the nine lots acquired by Plaintiff and an associate in March 2006 as part of a bulk purchase of 11 lots for $687,500 (or $62,500 per lot). (Ptf s Ex 1-1.) *Page 2 
The lots range in size from approximately one-fifth of an acre to one-quarter of an acre. (Def's Ex A at 13.) The lots are in Phase III of the Knolls Estates PUD subdivision, which is the third phase of a subdivision on the Oak Hills Golf Course in the Sutherlin, Oregon. (Id. at 3.) There are a total of 27 lots in Phase 3. (Def's Closing Argument at2.) The subdivision was "initially platted in or about 1996." (Id.) However, it was not until sometime in 2005 that the infrastructure for the subdivision (paving, water, sewer, gas, and electric hookups) was completed. (Id.;see, e.g., Def's Ex A at 34.[2]) It is the value attributable to the infrastructure that is at issue; specifically how much those improvements added to the value of the existing lots.
The parties have stipulated that the real market value (RMV) for each of the lots under appeal was $85,000 as of January 1, 2006, which is the assessment date for the tax year at issue (2006-07).[3] (Def's Closing Argument at 1.) The parties further stipulated that the lots were 100 percent "completed" (apparently referring to street paving, water, electricity, etc.) but "undeveloped" (i.e., without houses or other structures) on the January 1, 2006, assessment date. (Id.) The parties also agree that the change property ratio (CPR) for the year at issue was 59 percent. (Id.) Finally, the parties agree that, for the prior tax year (2005-06), each of the lots had an RMV on the assessment and tax rolls of $7000, a maximum assessed value (MAV) of $7266, and an assessed value (AV) of $7000. (Id.) *Page 3 
The only issue before the court is the "exception" RMV[4] for the 2006-07 tax year. (Id.) Defendant asserts that the 2006-07 exception RMV is $75,000, arguing that that figure captures the increase in value from a physically incomplete to a physically complete subdivision. (Id.) Plaintiff asserts that the 2006-07 exception RMV should be only $28,000. (Id.)
 II. ANALYSIS
In May 1997, Oregon voters passed by referendum Measure 50 (M50), which substantially modified the property tax system in the state of Oregon. Measure 50 is codified in ORS 308.142 through ORS 308.166.[5]
Prior to M50, a property was taxed at its RMV. Due to increasing values, Oregon voters chose to limit the growth of assessed values. In doing so, M50 created the concept of MAV. For the 1997-98 tax year, which was the implementation year for M50, the MAV was calculated by taking the property's 1995-96 RMV and subtracting 10 percent (i.e., 90 percent of the July 1, 1995 RMV on the assessment and tax rolls). Or Const, Art XI, § 11(1)(a).
M50 provides that, for each successive year, the MAV will generally increase no more than three percent a year. Or Const, ArtXI, § 11(1)(b); see also ORS 308.146(1). M50 also requires counties to maintain a record of the property's RMV because a property is to be taxed at the lesser of its MAV or its RMV. Or Const, Art XI, § 11(1)(f); see also ORS 308.146(2) (providing that AV is generally the lesser of MAV or RMV). ORS 308.232. RMV was, and continues to be, the most probable selling price of the property, in an arm's-length transaction, on the applicable assessment date. ORS 308.205. Moreover, RMV is important for, among *Page 4 
other things, the calculation of the change property ratio (CPR), which is applied to new property and new improvements to property as part of the calculation of MAV. See generally ORS 308.153.
Exceptions to the general three percent annual increase in a property's MAV exist. ORS 308.146(3) provides that, when certain changes are made to the property, the MAV may increase by more than the allowable three percent. In those instances, the MAV is the sum of 103 percent of the prior year (2005-06 in this case) AV (103% x $7000 = $7210) or 100 percent of the prior year (2005) MAV ($7266), whichever is greater, plus the RMV of the new improvements "multiplied by the ratio * * * of the average maximum assessed value over the average real market value for the assessment year." ORS 308.153(1)(b).[6] That ratio is referred to as the change property ratio (CPR).
Among the changes enumerated in the statute as exceptions to the typical calculation of MAV (i.e., for "exception value") are "new property or new improvements to property." ORS 308.146(3)(a). ORS 308.149(5)(a)(A) defines the term "new property or new improvements to property" as "changes in the value of property as the result of `new construction.'" Finally, the applicable administrative rule provides that "new construction" includes "improvement[s] to the land, including site development[s]." OAR 150.308.149-(A)(1)(a). This case involves new *Page 5 
improvements to property in 2005 in the form of site developments that constitute exception value for the 2006-07 tax year because they were added (or the additions were completed) in calendar year 2005.
As this court previously noted in Hoxie v. Dept. of Rev.
(Hoxie), 15 OTR 322, 326 (2001), determining how much RMV increases as a result of improvements to property "is a daunting task." Not all work done to a property can be added as exception value. Limitations are found both in the statutes and administrative rules, as explained more fully below.
In Hoxie, Judge Byers ruled that "the court cannot consider increases in RMV due to inflation, changes in market demand, or changes in management or use of the property." Id. The court went on to state that "a myriad of factors can affect the RMV of property." Id. Among the factors mentioned by the court inHoxie were "[c]hanges in interest rates, traffic patterns, laws such as the Americans with Disabilities Act, fire and safety codes, technology, costs, asbestos, and the many other things that can all affect RMV." Id. The court stated, however, that "none of those factors constitutes an exception to the MAV."Id.
The taxpayer in Hoxie testified that he spent approximately $225,000 on improvements during the relevant time period (excluding labor) and, while the RMV increased by well over $1 million, the court found that the increase in RMV constituting exception value (EV) was only $330,000. Id. at 328. In noting that exception value attributable to new improvements is to be based on changes in value, the court opined that "remodeling that costs $15,000 might increase the RMV of the property only $9,000, or it could increase the value $50,000. Id. at 326.
Five years after Hoxie, the court again addressed the question of exception value in Magno v. Dept. of Rev.
(Magno), 19 OTR 51 (2006). In Magno, the taxpayer's property value (RMV) increased by approximately $111,000 due to the completion of a remodel and the court found that the exception value attributable to the remodel was only approximately $73,000.Id. *Page 6 
at 67. In Magno, Judge Breithaupt ruled that "changes in interest rates, demand, and other market factors * * * cannot be included in the calculation of EV." Id.
Turning to the case at hand, the court must determine the correct amount of "value" associated with the improvements (i.e., the infrastructure added in 2005, which includes paving, water, sewer, gas, etc.) to the property completed in 2005 (i.e., the correct exception RMV). Plaintiff asserts that the exception RMV is $28,000. In support of that assertion, Plaintiff noted that Defendant assigned an exception RMV of $28,000 to other lots in the subdivision in 2005 (for the 2005-06 tax year). (See, e.g., Ptf's Exs 3-2, 3-4, 3-6, 3-8, 3-10.) Those lots had a tax year 2004-05 RMV on the rolls of $7350, and were increased to $53,000 for the 2005-06 tax year, an increase of $45,650, but the assessor nonetheless set the exception RMV at $28,000, more than $17,000 below the total RMV increase. (See, e.g., Ptf's Ex 3-1, 3-3, 3-5, 3-7, 3-9.) Additionally, Gerlt, who has considerable experience in property valuation, testified that two developers told him that the cost of developing a lot was between $25,000 and $30,000. Gerlt noted that his $28,000 exception RMV estimate fits comfortably in the middle of those two numbers and matches the exception value the assessor assigned to similar lots for the prior year.
Gerlt provided two alternative methods for calculating the exception RMV. One was to take the January 1, 2006, RMV of $85,000, subtract a $50,000 "trend" that Defendant allegedly applied to the subject lots between 2005 and 2006, resulting in a value $35,000, and then subtract the January 1, 2005, RMV of $7000 on the rolls, for a final exception RMV of $28,000. Gerlt's second alternative is a variation of the method described immediately above: Add the January 1, 2005 lot RMV of $7000 to the disputed $50,000 "trend," for a total of $57,000 and subtract that amount from the January 1, 2006, agreed-upon RMV of $85,000, to arrive at an exception RMV of $28,000. *Page 7 
Defendant disputes Plaintiff's $50,000 "trend" figure, arguing that the calendar year 2005 market trend was only approximately $3000, as explained below. In support of his claim that Defendant did in fact apply a $50,000 trend, Plaintiff points to language in Defendant's appraisal records that Plaintiff submitted into evidence. Among those documents is one entitled "Land Chart Audit Trail," which states that, in February 1998, lots in Phase II had "not yet been developed" and that, due to "extremely slowsales in Phase I and the high cost to develop Phases II III, * * * [t]he base value for interior lots was changed from $33,000 to $7000." (Ptf's Ex 4-2.) That notation reveals that Defendant reduced values due to a drop in market values as reflected by sales data. A later notation dated January 1, 2006, states that Phase III is now developed and that "[i]nterior unimproved lots were increased from $35,000 to $85,000." (Ptf's Ex 4-1.) The difference, of course, is $50,000, which Plaintiff insists demonstrates that Defendant added a $50,000 "trend." Support for that conclusion can be found in another of Defendant's records that shows that Defendant found an increase in the average value of interior developed by the unimproved lots of $50,000 between 2005 and 2006. (Ptf's Exs 5-1 and 5-2.) Acree acknowledged on cross-examination that the $50,000 adjustment was not due to any physical change in the property.
Defendant contends that the "trend" for 2005 was 1.44 percent. (Def's Closing Argument at 3; Def's Ex A at 20.) That figure comes from an exhibit titled "Market Adjustments," and indicates at the top that the adjustment was 1.04 per month. Id. Although there is a slight variation between the two figures, the resulting increase in RMV when applied to the $7000 January 1, 2005, uncontested roll value (RMV) for the lots at issue amounts to an increase of approximately $3000 to $4000.[7] Defendant calculates the exception RMV by *Page 8 
multiplying the $7000 January 1, 2005, RMV by the calendar year 2005 market trend adjustment of 1.44 ($3080), and subtracting that number ($10,080) from the $85,000 agreed-upon January 1, 2006, RMV. (Def s Closing Argument at 3.) That method generates an exception RMV of approximately $75,000 ($85,000 — $10,000 = $75,000 (rounded)). (Id)
Plaintiff raised questions about the quality of some of Defendant's data and valuation records. However, it is not enough to criticize the county's records or valuation. Poddar v. Dept. ofRev., 18 OTR 324, 332 (2005) (quoting Woods v. Dept. ofRev., 16 OTR 56, 59 (2002) (citation omitted)). Plaintiff in this case has done more than simply criticize Defendant's value. Plaintiff presented a case based on information contained in Defendant's assessment records and Plaintiffs expert witness Gerlt testified to costs associated with subdivision lot development. Although cost is not the determining factor in establishing exception value, it can provide useful information, especially when coupled with other relevant evidence of value.
The court agrees that Defendant has not treated Plaintiffs lots the same as it has treated the lots in Phase II improved the prior year. Defendant determined a 2005 exception value of $28,000 for the Phase II lots notwithstanding the fact that Defendant increased the RMV of those lots by more than $45,000. Here, Defendant has treated the entire $75,000 RMV increase as exception value. As Plaintiff has noted, Defendant determined that, in 2005, the "average" RMV for developed but unimproved interior lots was $35,000 and, in 2006, that value increased to $85,000. Defendant responds that Plaintiffs lots were unimproved for the 2005-06 tax year and improved for the 2006-07 tax year, which is the year under appeal, and that the $50,000 increase Plaintiff points to is irrelevant. The court disagrees. From the court's perspective, the $50,000 increase in the average RMV of those lots suggests a rise in the market of as much as $50,000, because there is nothing in the evidence to show that anything occurred to account for the increase in the value of those lots other than an increase in market activity. They were developed *Page 9 
and unimproved in 2005 and remained in that state in 2006 (i.e., the infrastructure was complete but there were no homes). The fact that Plaintiff's lots went from undeveloped to developed (i.e., Plaintiff completed the infrastructure) between 2005 and 2006 is a separate matter.
Finally, Defendant increased the RMV of the developed but unimproved lots in Phase II by $32,000 between the 2005-06 tax year and the 2006-07 tax year, from $53,000 to $85,000. The parties agree that the developed but unimproved lots in phases II and III are very similar. Defendant certainly thought so, because it valued those lots and Plaintiff's lots all at $85,000 (RMV) for the 2006-07 tax year. The $32,000 RMV increase for the Phase II lots from 2005 to 2006 suggests a rise in the market of $32,000 because the exception value for the Phase II lots was added for the 2005-06 tax year and there is no indication that any other changes were made to the property in 2005 to account for the $32,000 increase for the 2006-07 tax year.
Plaintiff has the burden of proof and must establish its case by a "preponderance" of the evidence. See ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. ofRevenue, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." Reed v. Dept. of Rev.,310 Or 260, 265, 798 P2d 235 (1990).
Plaintiff has successfully demonstrated an error in the record assessment. That being the case, it is the court's responsibility to "determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.
Considering the evidence as a whole, the court finds that Defendant has erred in setting Plaintiff's 2006-07 exception value for the nine lots under appeal. The preponderance of the evidence suggests that, during the 2005-06 and 2006-07 tax years, the market rose between $32,000 and $50,000 independent of any physical changes to the property that would constitute *Page 10 
exception value under the statutes, regulations, and case law. The court concludes that the appropriate exception value for the subject lots was $34,000. The court arrives at that number by adding Defendant's tax year 2005-06 trended RMV of approximately $10,000 to the midpoint between the indicated market increase of between $32,000 and $50,000 (i.e., $41,000) and subtracting that number from the $85,000 stipulated 2006-07 RMV for the subject lots.[8]
 III. CONCLUSION
Having carefully considered the evidence in light of applicable law, the court concludes that the tax year 2006-07 exception RMV for the nine developed but unimproved lots under appeal was $34,000. The parties have stipulated to a change property ratio of 0.59 percent.[9] Following the applicable statutes, Defendant shall apply the change property ratio to the court ordered exception RMV of $34,000, add the product of that exercise to 103 percent of the prior year's MAV, and determine the AV accordingly and consistent with applicable law. Now, therefore, *Page 11 
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is granted, and the exception RMV of each of the nine lots at issue is $34,000. Defendant shall adjust the assessment and tax rolls accordingly for the 2006-07 tax year and make any necessary adjustment to subsequent tax years required by applicable law (e.g., absent any subsequent adjudicated values, the MAV should increase three percent per year for tax years following 2006-07).
Dated this ___ day of September 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Dan Robinsonon September 23, 2010. The Court filed and entered this documenton September 23, 2010.
[1] In an Order filed March 12, 2009, the court dismissed Accounts R62071 and R62078, leaving nine accounts at issue.
[2] That exhibit is a "Certification of Completion" by the Phase 3 "Project Manager, i.e. Engineer" dated December 30, 2005.
[3] The case involves a "prior tax year," and is before the court under ORS 305.288(3) (2005) based on an earlier court determination that Plaintiff failed to timely petition the county board of property tax appeals due to good and sufficient cause. (See
Court's Order at 5, filed Mar 12, 2009.)
[4] "Exception RMV" is a term used to identify certain changes to property for the current tax year that result in additions to both RMV and MAV, and an exception to the typical constitutional and statutory cap of three percent on annual increases to MAV. ORS 308.146(1) (2005) (providing generally for annual three percent MAV increases); Or Const, Art XI, § 11(1)(b) (generally capping annual MAV increases to three percent over the prior tax year); ORS 308.146(3) (providing for alternate method for determining MAV for new property or other changes to property, that have come to be known as "exception value").
[5] Unless noted otherwise, all references to the Oregon Revised Statutes (ORS) are to 2005.
[6] The statute provides, in relevant part:
 "(1)If new property is added to the assessment roll or improvements are made to property as of January 1 of the assessment year, the maximum assessed value of the property shall be the sum of:
 "(a) The maximum assessed value determined under ORS 308.146 [generally 103 percent of the prior year's MAV]; and
 "(b) The product of the value of the new property or new improvements determined under subsection (2)(a) of this section [providing that the value of the new property is the RMV of the new property reduced by the RMV of any retirements] multiplied by the ratio, not greater than 1.00, of the average maximum assessed value over the average real market value for the assessment year."
 ORS 308.153.
[7] Defendant in its written post-trial closing argument calculates the trend to be $3080 using the 1.44 percent annual trend. The court applied the 1.04 percent per month trend to the $7000 value and arrived at a market increase of $4207.
[8] $85,000 — ($41,000 + $10,000) `$34,000.
[9] By administrative rule, the actual change property ratio is "rounded to three decimals." OAR 150-308.156(1) (as last revised in 2002 and in effect in 2005).